1. Counsel for the accused on trial made an objection to portions of a witness's testimony, and in reply to the objection the State's counsel, addressing the court, said, "Your honor, I insist upon it. I am willing to go up on it, your honor;" and thereupon counsel for the accused moved for a mistrial in view of the statement of the solicitor-general, which was alleged to be prejudicial and inflammatory. The court said to the jury: "The statement made in your presence a moment ago when some discussion of the admissibility of testimony was before the court, by the solicitor, to the effect that `he was willing to go up on that,' was an improper statement by the solicitor and should not have been made. It is stricken from the case and ruled out, and you are instructed to give it no weight, and completely disregard it. Try the case fairly and impartially between the State and the accused. You may resume." A ground of a motion for new trial, urging that the statement of the solicitor prejudiced the defendant's case and denied the accused a fair and impartial trial, that the statement by the court to the jury failed to remove its effect, and that this inflammatory remark of the solicitor-general entered into and controlled the verdict, and that for this reason a new trial should be awarded, is without merit. Nelson v. State, 187 Ga. 576 (1 S.E.2d 641); Wells v. State, 194 Ga. 70 (20 S.E.2d 580).
2. In a rape case, a charge that "There must be some corroboration of the woman's testimony. The defendant in this case should not be convicted upon the testimony of [the accuser] alone, however positive it may be, unless the same is corroborated by some concurrent circumstances," is not erroneous by the inclusion of the clause "however positive it may be." Compare Hamilton v. State, 143 Ga. 265
(84 S.E. 583).
3. The evidence supported the verdict; and the same having received the approval of the trial judge, and nothing being shown in the motion (the only two special grounds of which are dealt with above) to justify a new trial, the
Judgment is affirmed. All the Justiceconcur.
 No. 14590. JULY 8, 1943.
 STATEMENT OF FACTS BY GRICE, Justice.
Adel Johnson was convicted of rape. The evidence was to the following effect: The defendant escaped from the Stonewall convict camp in Fulton County, where he was confined, about nine o'clock on the night of January 3, 1943. On the following morning he went to 2670 Cascade Road in Fulton County, the home of a man who lived with his wife and a little girl. The defendant, a negro, asked the wife for a dose of soda, saying "My boss is sick." The wife testified: "He followed me up the steps, and when I taken hold of the screen door . . he pulled his gun *Page 359 
out and threw it in my breast. My husband was in the bed asleep, and I started to scream. . . He then said, `I am an escaped convict. . . Haven't you heard about the break last night?' . . My husband started in there to me, and he told my husband not to come in or step forward; if he did he would shoot me. . . . . My husband was lying on the floor when I came to, . . tied up and covered up with a wool blanket. . . The negro then got a pair of pants out of the clothes closet, and put them on. They were my husband's pants. . . He came over there and kind of rolled me over and commenced pulling my clothes up; and I had to let him know then that I had revived, and I asked him to leave me alone, that I would be all right. In the meantime he asked my husband if he wanted him to pick me up and put me on the bed, and he said, `No, she is all right; you hurry up and get out of there, so I can do something for her.' He gave me order to get off the floor and go to bed, and he asked me to undress, and I refused to do that, and he put the gun right at my temple and said, `I am going to shoot you if you don't.' . . I thought of my little girl, and knew it was either to die or do what he said, and I started to undress. After I undressed he tied my hands behind me and made me lie down on the bed, and then he attacked me and stopped and put a pillow under my hips. This defendant had sexual intercourse with me, and then he stopped and forced me to raise up and put this pillow under my hips. . . He kept on saying he was going to shoot us, and I kept on begging him not to kill us. . . And we had to promise we would not tell on him before he would go on out, and he finally said he would go and take a chance on letting us live. He went out the door and he got my husband's car-keys and what money he had in his pocket. . . I recognize the pants that you show me. They are my husband's pants. I recognize the handkerchief you show me. It is my husbands handkerchief. I washed it many a time. The handkerchief was in the pocket of the pants that he took from my husband. . . This defendant actually penetrated my person. I don't know just how long, but he took his time. . . He consummated the act and finished it. He left a stain on the pillowcase . . you show me."
The husband testified: "On Monday, January 4th of this year, *Page 360 
there was a hold-up and rape. I was working at night and sleeping in the daytime, and I was in the front room asleep, and I heard my wife scream, and I jumped up and ran to her, opened the door, and that negro had the gun on her. . . He told me, while he had the gun on the floor, that he had escaped from Stonewall camp, and he said all he wanted was some clothes, he didn't want no money. After he got the gun on me he told me to lay down on my face, and I laid down on my face, and he made me put my hands behind me. . . He tied my hands behind me with a string or something, and then tied my feet together, and then taken a wool blanket and throwed over me. . . My wife was laying over there. I thought she was still unconscious. He went out and changed his pants, . . and he asked me if I wanted him to put my wife on the bed. . . My wife was lying on the floor then. I could not see what he was doing, but I could hear him. He told her to pull off her clothes. She refused to do it. He said, `Pull them off or I will shoot you,' and he said, `You move over there and I will shoot you, too.' My hands and feet were tied. So he made her pull off her clothes, and she begged him and prayed and prayed, and begged him not to do it. He told her to be quiet, he would shoot her in a minute. I heard him tell her to get on the bed. He told her if she did not do what he wanted he would just blow her brains out and then kill me. It seemed like he stayed on the bed five hours, but it wasn't that long, I reckon. . . He got up and said, `I think I will just kill you all. . . You all are not going to let me live anyway.' He still had the blanket over me. . . We both begged him, and he went on out. . . He had taken $2.50 out of my pocket . . and my car-keys and drove my car off. He told me where he would leave it at, and he left it right where he said he would. He took a pair of pants of mine. The pants you exhibit to me are the pants he took. . . The strips of cloth you point out to me are what he tied my hands behind me with. The same is true as to the belt. . . He had my feet tied with a white cloth, and he had my wife's tied with one, too. . . After I got out from under the blanket Mrs. Bolden was on the bed without any clothes on at all. I examined the pillow-slip you have there, and there was that dirty spot on it. While I was under the blanket I could hear the bedsprings, and he was talking to my wife, telling her if she moved he would kill her." *Page 361 
Y. H. Allen testified that he captured the defendant, who was hiding behind some bales of cotton on the campus of Gammon University, and that the defendant was wearing the pants exhibited to the witness. Joe Perry, a police officer, who was called on the morning of the commission of the crime, described the premises, and testified concerning photographs made at that time. Officer John Carter gave similar testimony, and testified that the defendant was wearing the pants exhibited to the witness. The pants identified by the witnesses were introduced in evidence, as were also photographs of the room in which the crime was committed, and of the bed.
The defendant made no statement and introduced no evidence. He moved for new trial on the general grounds, and on two special grounds dealt with in the headnotes. The court overruled the motion, and the defendant excepted.